**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge John L. Kane

Civil Action **No. 10-cv-02584-JLK-KLM**

**TRAVIS LUJAN**

        Plaintiff,

v.

**GLOBAL CREDIT AND COLLECTION CORPORATION**

        Defendant.

---

ORDER

---

**Kane, J.**

Plaintiff Travis Lujan brings this action against Defendant Global Credit Collection Corporation (Global) alleging that Global violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq (FDCPA) when attempting to collect a debt from him. Pl.'s Mot. for Partial Summ. J. at 1. Mr. Lujan incurred a balance of $949.99 on a Capital One account for what he alleges were personal, family, or household expenses. Pl.'s Aff. 1 ¶¶ 5-6. The account went into default with Capital One on October 2, 2010, after which point the account was transferred to Global[1] for collection. Pl.'s Mot. for Partial Summ. J. at 1

Beginning in July 2010, Global representatives began calling Mr. Lujan in attempt to collect on the Capital One account. Pl.'s  Aff. 4 ¶ 30. Mr. Lujan alleges eighteen phone calls were made to his cellular phone between July 7 and August 17, 2010. *Id.* at 4-5 ¶¶ 29-45. Apart from a single conversation on July 21, for which we have a transcript, it is unclear from the

---

[1] The parties do not dispute that Global is licensed and operates in Colorado as a debt collector within the meaning of the FDCPA.

record if Mr. Lujan answered any of the other calls, and if not, whether Global left any voicemails.

The July 21, 2010 telephone conversation forms the basis of several of Mr. Lujan's claims. Complaint at 4 ¶¶ 33-38. The transcript of that conversation reveals that  Mr. Lujan called Global in response to a call he had missed. Canter Aff. (attached to Def.'s Surresponse (doc. 33)), Ex. A at 1. A Global representative answered and pulled up Mr. Lujan's account. *Id.* The representative explained that Mr. Lujan had an overdue balance of $949.99 on a Capital One credit card, which Global was now attempting to collect on behalf of Capital One. *Id.* Mr. Lujan expressed concern over whether the debt was being reported to the credit bureau. *Id.* The representative equivocated, stating at first that there was a possibility the account was being reported, quickly clarifying that the account was, in fact, being reported. *Id.* Mr. Lujan asked how long the account would be reported. The representative responded, "as long as you still have the balance, it could be a few months, it could be a year or it could be tomorrow if Capital One pulls it back and they do something about it."  Tr. at 2. Unsatisfied by this somewhat vague answer, Mr. Lujan asked when exactly the account would be removed from his credit report. *Id.* The representative responded that he did not know. *Id.*

Mr. Lujan then indicated that he had heard elsewhere that if he refused to pay off the account, it would eventually "just fall off [his] credit report." Tr. at 2. The representative suggested that this was correct, but that it "can be up to 15 years" and that if Mr. Lujan did not "want to pay it off" it would be marked as a "refusal." *Id.*  The representative also cautioned that "it gets worse" the longer Mr. Lujan waits to pay the account off, because the bills "accumulate." *Id.* Mr. Lujan remarked that he "can't pay the account" and that he is "disputing [the] debt." At

this point the representative put Mr. Lujan on hold so he could get his supervisor on the line to discuss Mr. Lujan's options in disputing the debt. *See id.*

When the supervisor, Andrew, got on the line, Mr. Lujan asked again how long the account would be on his credit report. Tr.  at 3. Andrew explained that it would be reported as a bad debt until it "gets paid off" and that his credit would be negatively impacted as a result of the debt. *Id.* Mr. Lujan abruptly responds that he disputes the debt. *Id.* A brief exchange ensued regarding the proper procedure for disputing the balance. *Id.* Andrew explained that Mr. Lujan would need to send Global a dispute letter so that Global could close the account, and then Mr. Lujan could then dispute with Capital One directly. *Id.* Mr. Lujan asked if it was not then possible to dispute with Global directly. Andrew said this was not possible as Mr. Lujan's debt was owed to Capital One. *Id.*

At the end of the conversation Mr. Lujan asked for Global's address, which Andrew provided promptly, and told Andrew "it is not convenient for you to call me during working hours, so please do not call my cell phone and on my home phone number before 7:00 p.m." *Id.* at 4. Andrew clarified, "on or before 7:00 p.m.?" and assured Mr. Lujan that this would not be an issue. *Id.* Andrew provided his name, phone number, and direct extension. *Id.* As Mr. Lujan ended the conversation he said, without completing his thought that he was "looking to." *Id.* Andrew asked what he was "looking for." Mr. Lujan did not address the question, and said he had to get off the line. Df.'s Ex. A at 4. The conversation ended. *Id.*

Mr. Lujan filed his Complaint on October 22, 2010. The parties attended their Rule 16 Scheduling Conference on December 30, 2010. A mere four days later, and without waiting for discovery to commence, Mr. Lujan filed his Motion for Partial Summary Judgment as to Liability. Global filed a Response on January 24 objecting that Mr. Lujan's Motion presumed

facts not inferable at the time. In the interim, the parties scheduled a settlement conference and I stayed briefing on Plaintiff's Motion. When no settlement was reached, I ordered the Defendant to file a Surresponse, and afforded the Plaintiff the opportunity to file a Reply in support of his Motion. Global's filing of a substantive surresponse with an affidavit and full transcript that cast Mr. Lujan's affidavit—the sole factual support for his claims—into dispute, by itself renders summary judgment inappropriate. Construing Mr. Lujan's Motion as a request for a legal determination that the subject of the debt falls within the purview of the FDCPA, I proceed to consider whether Mr. Lujan has incontrovertibly established that the debt was incurred "primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).

## STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).  A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented.  *Id*.

On a motion for summary judgment, the moving party bears the burden of demonstrating there are no genuine issues of material fact that should be decided at trial. *Id.* at 1145.  Where, as here, the moving party bears the ultimate burden of persuasion at trial, it must come forward with admissible evidence proving the essential elements of the claim. *Id*.  In deciding whether the moving party has carried its burden, I do not weigh the evidence and instead must view it and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id*.

When the moving party has discharged its burden, the burden of production shifts to the nonmoving party who must point to holes in the movant's proof or show a genuine issue of fact

by submitting evidence. Neither unsupported conclusory allegations nor mere scintilla of evidence, however, are sufficient to create a genuine dispute of material fact on summary judgment. *See Mackenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). Rather, more than "some metaphysical doubt" as to the material facts must be demonstrated by the nonmovant to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### Nature of the Debt

In order to pursue a claim under the FDCPA, a Plaintiff must satisfy three threshold criteria. Most relevant to this motion, he must show that he has been the object of collection activity arising from debt incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).  As Global indicates, courts require that a party stating a claim under the FDCPA "plead facts to establish the nature of the debt for substantive reasons – not simply to be nit-picky." *Dokumaci v. MAF Collection Services*, 2010 WL 2560024 at *2 (M.D. Fla. 2010); *see also* Sullivan v. CTI Collection Services, 2009 WL 1587588, *2 (M.D. Fla. 2009) (dismissing complaint on grounds that plaintiff merely recited elements of an FDCPA action where the complaint simply alleged that plaintiff allegedly owed a debt as that term was defined by the FDCPA without furnishing any supporting facts). The determination of whether a debt was incurred "primarily for personal, family or household purposes" is a fact-intensive inquiry to be resolved on a case-by-case basis, and therefore necessitates consideration of all relevant factors, including the identity of the individual debtor, and whether the debt was incurred in his individual capacity for personal purposes. *Hansen v. Ticket Track, Inc*., 280 F. Supp. 2d 1196, 1203 (W.D. Wash. 2003).

Mr. Lujan contends his Affidavit establishes the necessary prerequisites for asserting a claim under the FDCPA. He argues that his Affidavit is unrebutted and that he is therefore entitled to a legal determination that he has standing to pursue a claim under the Act. Global demurs, arguing the conclusory nature of Mr. Lujan's Affidavit precludes such a ruling and that the factual prerequisite to standing is a question for the jury in this case. I agree.

Mr. Lujan has failed to establish as undisputed fact that his debt was incurred primarily for personal, family, or household purposes. In neither his Complaint, nor his Affidavit does Mr. Lujan allege specific facts that indubitably reveal the nature of the debt incurred. Indeed, it was for this reason that I stayed briefing on Mr. Lujan's Motion in part to allow supplementation on the issue.[2] Yet, Mr. Lujan, who notably is in the best position to recall exactly what he purchased on his Capital One credit card, has yet to shed any meaningful light on the nature of the debt,  let alone furnish any concrete record of his transactions.

Indeed, as the Defendant suggests, Mr. Lujan's responses to the interrogatories are as unavailing as his Complaint and Affidavit. Mr. Lujan does little more than mimic the statutory language and provide vague reference to purchases for gas, food, and other similar personal items, providing no indication of the proportion of purchases that were of this nature, let alone any specificity. While these allegations may be sufficient to overcome a 12(b)(6) pleading standard, they are not sufficient to establish as a matter of law that the debt was consumer in nature. Thus, there remains a factual uncertainty as to whether Mr. Lujan even has standing under the FDCPA, an uncertainty that is alone a sufficient basis for denying summary judgment. Therefore, I need not and, in fact, decline to reach Mr. Lujan's substantive claims under the Act.

---

[2] *See* Order Staying Briefing on Pl.'s Mot. Partial Summ. J. (Doc. 17).

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Partial Summary Judgment as to Liability is DENIED.  This matter will be set for a Pretrial Conference and set for forthwith trial by separate minute order.


DATED: July 19, 2011

                                            **s/ John. L. Kane**
                                            SENIOR U.S. DISTRICT JUDGE